May it please the Court, my name is Kevin Meyer. With me is Jim Blair from the firm of Renault, Cook, Drury & Mazaros on behalf of the Plaintiff Appellants, John Howard, Gary Frazier, and Glenn Schad. I'm going to try to reserve about five minutes on hand for rebuttal, although I'll do my best to keep track of that. I'll try and help you. I appreciate that. And I'm going to use the time we have for argument to focus on the first two issues, the summary judgment ruling and the striking of the expert, and we would submit the rest on the briefs. We submit that the District Court erred in granting summary judgment in this case for a number of reasons. First, we think the District Court impermissibly held us to our trial burden instead of our summary judgment burden in violation of Shalley v. Garan. We also believe that the District Court applied the wrong standard in regarding the quantum of evidence needed to survive pretext. And thirdly, we believe the District Court erred by failing to afford us all of the reasonable inferences that are due to the non-moving party of summary judgment. First, I think it's clear that the District Court was concerned about a lack of evidence of but-for causation at the summary judgment stage. And I guess I'm looking at page ER45 in which the court writes, Appellants have come forward with a lot of evidence, but most of it does not go toward proving the real reason they were terminated is because of age. And I think that that statement alone shows that the District Court was looking for evidence of but-for causation at summary judgment. And I think the court under Shelley v. Garan is not allowed to do that. And I think Shelley v. Garan is consistent with other opinions that we've cited on page 35 of the opening brief, Noyes and Terrell and other cases. And is that what Judge Holland meant? Or was he really saying that you haven't come forth with substantial evidence of pretext? I mean, that's basically what he says at ER45, does he not? Well, he does say at ER45 the real reason they were terminated is because of age. And other cases, like the Chang case, clarified that pretext is just sufficient evidence to suggest that the proffered non-discriminatory reason should not be unworthy of credence. So there doesn't have to be that connection at summary judgment stage under Shelley to show that not only is it pretext, but it's covering up a specific discriminatory animus. We just have to poke holes in their offered reason. Because McDonnell Douglas is a fairly permissive standard for employers. It allows them to get out on summary judgment, as long as they offer a reason that sounds real and is non-discriminatory. Go ahead. I was just going to say, the problem with your argument, unless I'm missing the thrust of it, is as I understand the McDonnell Douglas three-stage burden-shifting process, once the burden shifts at stage two after the employer comes forward with a plausibly legitimate reason for the termination, you have to establish some evidence of pretext, which we have said doesn't have to be a huge amount of evidence. But what I hear you saying is, well, age. But age gets you to step one, through step one. You've got to have something more than age at step three. Absolutely, you do, Your Honor. And there's a question about using your prima facie evidence towards pretext. We think that there is clear evidence of pretext in this case. And, again, I'm quoting from the district court's ruling. The district court ruling talked about the cost-benefit analysis that we presented, and we talked about the fact that these employees, 84 years combined experience, and the amount of time that they actually missed, about 100 hours. When you just compare those two, and, again, we figured the value of that time was about $130. On that alone, that sounds like maybe not that big of a deal. Counsel, if someone stole $130 from a multimillion-dollar corporation, would it be your view that it would not make sense to terminate that person? No, Your Honor, I'm not trying to suggest that. What I'm trying to suggest is that when you're talking about a time card policy with respect to breaks, breaks that are guaranteed and encouraged to be taken, and you're talking really more about an accounting system, that suggests that the issue is not really true theft, as plaintiffs have suggested in this case, but an administrative issue. In fact, the fact that there had to be a separate memo that came along that reminded folks that we're going to be enforcing the break card policy a little bit differently suggests that there wasn't uniform enforcement of this. Well, it may not have made economic sense, and it may have been petty, but that doesn't make it discrimination. That's the difficulty I'm having with your argument. It doesn't support an inference of discrimination as opposed to maybe an arbitrary rule. No, but it does suggest perhaps that maybe that really wasn't the real reason they were terminated. If there was something else in the record that would give us an inkling as to the real reason, perhaps that evidence would be stronger pretext evidence, but other than their ages, there's nothing else in the record. There's no memo saying we want to get rid of some of our older workers or just something that we normally have along that line to support an inference of pretext. Respectfully, I would consider that to be direct evidence of discriminatory animus, and we're still allowed to present circumstantial evidence. But what is there? That's the problem. And even in terms of circumstantial evidence, you know, older people being singled out or being treated differently, I mean, what is there in the record in the nature of circumstantial evidence even? I guess I read Shelley differently then, because I think that all I have to do to survive summary judgment is to suggest that the reason they've given is false. And I think what you do more than suggest, you have to give us some either circumstantial or direct evidence from which an inference can be drawn that the real reason was discrimination. It has to be more than a suggestion. I guess my understanding is that pretext is sufficient just to cause a reasonable trier fact to doubt the reason given. Exactly. Based on a reason. What are your reasons? The reasons that you should distrust the reason given, again, aside from the cost-benefit analysis, is the fact that progressive discipline was suggested in the memorandum and was not used. But the policy specifically says in certain circumstances, and then they list willful violations, time card fraud, we aren't going to follow progressive discipline and you can be terminated immediately. I think a proper reading of this record doesn't qualify. Doesn't the policy say that? I'm pretty sure I read it in the employee handbook. When you have Mr. Garcia's testimony that this practice of taking breaks combined had been going on for six years, I think that puts it into a different category than the other cases that they've cited in which employees were terminated for actual fraud, going to the doctor's office when the doctor's office was closed, taking personal time. One of the problems I'm having is the videotape showed that, I think this is a really significant piece of evidence, the videotape shows that as soon as the 30-minute period elapsed for the lunch break, these employees would go out and clock back into work, but then they would go back into the break room and continue their break. I mean, that looks to me like time card fraud. And that is done willfully with a big clock sitting on the wall that you can see in the videotape. You do have employees who are on premises, who are taking breaks, their understanding of how they've been practicing for the last six years, who some days you don't get breaks, some days you take breaks and maybe you make up a little extra time. These aren't people who are off on their own time. They can come back to work as soon as someone says, hey, the customer's here, we really need to get going. You misunderstand the import of my question. The concern that I have with that piece of evidence in particular is we'd have a much different case if the record showed that there was no practice of clocking back in after lunch, and the argument I suppose would be, gee, we didn't realize that the time had passed and we were over 30 minutes. But when you get up, leave the room, go to the time clock, punch back in, and then go back to the break room and continue your break, there's no excuse beyond the only inference I can draw from that evidence that the act is done deliberately and it is an act of time card fraud. You do have evidence in the record as well that Mr. Cooksey initially suggested progressive discipline, and then you have the e-mail that said termination before the decision was made, suggesting that there was always going to be a termination, that there really wasn't an investigation or consideration. But does a, I don't know what it would be called, a disagreement among management as to what the proper discipline should be that should be imposed? Is that evidence of pretext? I think if a reasonable fact finder could conclude from that e-mail that a decision to terminate had been made before any actual consideration or investigation had taken place, that they were looking for a reason to fire them. The company policy says we terminate for willful violations and time card fraud. And the employer knows that the allegation is that the employees have engaged in time card fraud and orders an investigation. Even if the decision maker is thinking I may have to terminate here, I still don't see how that's evidence of pretext. If the investigation confirms the allegation. I'll try to say two things quickly. First, I guess, like I said, I think a reasonable fact finder could conclude from that that a decision had been made before a process had begun. The second thing is, and this is on ER 10 cited by the court itself. But, again, pretext. You've got to show age discrimination. And where's the evidence of age discrimination? That's what I think was troubling Judge Holland. Yes, but I think that the but for causation of age discrimination, again, is part of the trial burden. I don't think that enters into the pretext part. Well, I'm looking again at, I mean, I think page 45 is a significant one. He has that one paragraph where he says, finally any argument that defendant's decision to terminate plaintiffs was pretext for age discrimination is undermined by the fact that defendant also terminated younger employees who were found to have engaged in theft of time. Respectfully, I think that's not a fair reading of those younger employees. Those were the ones I described that were outside of work and were clearly falsifying the representations as to why they went out. But if the terminable conduct is willful time card fraud, how do you distinguish the two cases involving the younger employees from the three cases involving the older employee, if they are both found to have done exactly the same thing? It's not. I think a fair reading of this record is that they're not even close to the same thing. Telling your employer that you're going to a doctor's appointment when the doctor's office is clearly closed and being off-site is different than being on-site and combining breaks and being available to return to work quickly. Go back to my problem with the clock. Leaving the break room and punching back in and then going back to the break room. I think there's a question as to whether this is truly willful. Let me just add one quick point, if I may. The memo stated that progressive discipline needed to be initiated using a form if the employee continues to not account for hours taken. That language suggests that the company even sort of expects on its own part that there might be additional time card violations. And so one time card violation by itself probably is not going to result in termination. I'll just real quickly say that I think the district court also erred by striking our expert who also would provide evidence of pretext. I just want to make sure I said that before I save time for rebuttal. Okay. We'll let you save two minutes and 47 seconds. Mr. Hoffman. May it please the Court. My name is Chris Hoffman. I'm appearing today on behalf of Rider Truck Rental. As the Court's already addressed, in order to avoid summary judgment, appellants needed to demonstrate specific and substantial evidence that the decision maker made this decision dishonestly. If this wasn't an honest assumption based upon the investigation that was conducted, it's not the role of the Court, it's not our role at all, to decide whether we think it was a good decision, whether it was a sound business judgment or not. It's simply whether that decision was made honestly. And inevitably that focuses back on Jim Cooksey. And the question simply is, when he determined that these people violated the policy intentionally, did he make that decision in good faith? It's that simple. There's absolutely nothing in the record that would support even an inference that his decision was not in good faith. I sometimes, when I'm trying to come to the end conclusion, find it helpful to go back to the beginning. And I think in this case it's particularly helpful. Because the record glosses over a little bit how this all started. It started from a co-employee going to a supervisor and basically saying, I've had it. For five to six years these guys have been doing this a hundred times. Extending their rest periods. This was never about whether or not these individuals inappropriately combined a rest period and a meal period. That's not why they were terminated. They were terminated because they excessively expanded upon the allotted rest periods. And the entire course of the investigation confirms not only that it was a good faith decision, but really that it was the only conclusion that Jim Cooksey could have made. Mr. Cooksey himself is in the protected category. He had never had any idea of the ages of the appellants. He didn't know these people personally. He didn't have their entire work history in the performance evaluation handy. And he really conducted this in an almost model way. He received an initial report, initial recommendation for termination. He didn't take it on face value. Instead he asked a subordinate HR person to go back and independently verify that, in fact, this occurred. Look at the tapes. Tell me how many minutes. It was in the secondary investigation that it was determined that not only had these three individuals violated the policy on tape, as Your Honor noted, punching back in conveniently when their unpaid period ended, but the two days prior he reviewed as well and found that they did it again. And in every one of those situations their immediate manager was not present. Counsel, the experts certainly did not agree that this investigation was conducted in a model fashion. If we looked at, if we determined that the district court abused its discretion in excluding the expert report, would that be sufficient to raise an issue of pretext? No, Your Honor. I do not believe it would be. And for a few reasons. First of all, the expert didn't have a full record. The expert based her decision upon a fragment of the record, did not opine anything after the depositions had occurred, and the full record had actually been presented that was available to the court. Furthermore, I find a lot of times when termination investigations are viewed there can be blinders in that people tend to view all terminations as the same. And they're not. In a poor performance discharge, it would be reasonable for an investigator to look at the factors that the profit expert analyzed, because you're trying to get the full picture of the person's life cycle and how bad that performance problem is. When it comes to misconduct, it's much more focused. It's simply what is the policy and did the violation occur. And really here, there's not even a modicum of a dispute that the policy was violated. The appellants admit that. They violated the policy. They took excessive breaks. And so the only thing the expert can really do is say, I disagree with the decision. That's it. That's insufficient to show specific and substantial evidence of pretext. She talked about some markers that can be considered in assessing whether or not there's pretext. What's your response to her listing of those markers? With all respect to the profit expert, I don't think they apply in this situation. I personally think and I think professionally think that that is a little bit of a cop-out. There's no such thing as markers to an investigation of misconduct. You have to look at each investigation separately. And if you look at the conduct of Mr. Cooksey, all of the appropriate markers of standing back and saying, what would an appropriate manager do when confronted with videotape evidence of a violation? Remember, what he's doing now is he's not determining who said what to whom in which locker room. He's simply trying to decide, do I believe these people did this intentionally? That's all he has to investigate. And so those markers are really designed more for investigations of harassment or retaliation. There's more of a subjective element to it. It frankly wouldn't have helped the question here. When I go back to the investigation as well. Would you agree that there would be an argument that they should have given a warning, they should have given another chance? I assume you're saying you can debate that, but it doesn't matter. Is that what you're saying? Honestly, I don't think it's really that debatable, Your Honor. I think termination was the appropriate standard from the get-go. As the courts already acknowledged, the policy in question, the progressive discipline policy in question, aside from having the generic markers of saying we reserve the right to terminate at any time for any reason, enunciates specific violations that will result in immediate termination. Well, but we do have the evidence with regard to Mr. Cooksey, and I believe his biggest concern was terminating Mr. Shadd, because Mr. Shadd was a longstanding employee of, what, 34 years? Correct. With basically an unblemished work record. And termination is a pretty harsh discipline for somebody with no prior record. The other two are easier because they did have prior disciplinary violations. And with all respect, Your Honor, I think trying to demean Mr. Cooksey's investigation because he was prudent doesn't provide specific or substantial evidence of pretext. Remember, that was very early. I couldn't distinguish between, based on the conduct, I couldn't distinguish between terminating the two prior offenders, if I can use that term loosely, from Mr. Shadd when they engaged in exactly the same behavior. That part is true, but I think more fundamentally, what Mr. Cooksey was saying at that time was, I'm not comfortable yet saying this was intentional conduct. And remember, that was at the initial phase, and it was after that that he then asked his subordinate to go do the more thorough investigation. And he waited to get all that data back, which included, again, the secondary corroboration they did at the two subsequent days when the manager was again gone. And so it was, again, if you're talking about a thorough, good-faith investigation, it is actually evidence that that, in fact, occurred. He did not jump to a conclusion. He took a more measured approach, gathered the data, and made, in the end, the inescapable conclusion, I believe, that it was intentional. Remember, at that time, he himself hadn't seen the tapes. He didn't know that the people had punched back out and come back into the restroom. He just had the basic allegations and the basic statements. And he was the one who made the ultimate decision. He was the one who made the decision. The other factors, I think, for Mr. Cooksey that, again, not only don't support an inference of specific or substantial pretext, was that he looked at the broader picture. And, again, this Court's already identified. He said, who else in the area, if anybody, has similarly engaged in actions of time card fraud? He found two people. He determined they were both fired. So, again, it was very consistent. It just so happens they happened to also be under the age of 40, so outside a protected category. So it's the adverse of specific or substantial evidence of pretext that actually confirms the consistent course of action. And, notably, there was no evidence presented of somebody who committed time card fraud and was not fired. So we had both sides here that were met.  I think it's at least worth reminding the Court that the testimony in the record about the pre-justice dissent policy, in addition to being clear, was also acknowledged by the appellants. They understood it. They understood they could be terminated at any time. They had read and signed off on the policy. There was no inconsistent actions with that policy. And I think under the guiding law and the circuit, you can't find pretext under those circumstances of the case. I think I need to at least quickly address the expert issue as well, since it's come up a couple of times. It's somewhat ironic to me that the thrust of the argument from the appellants is that the expert report should not have been to present new evidence, when really what was happening is it was their evidence that was being rejected. That was entirely within the discretion of the Court. Well, I think the argument was we didn't have an opportunity to address the Rule 702, Rule 403 issue with regard to its admissibility as a proper expert opinion. Well, first I say it's within the Court's discretion to make those decisions. But the motion on behalf of our client was denied. And at that point, the judge has to make a decision as to whether he's going to permit or exclude certain categories of evidence. He looked at the report, and he made his discretion to exclude it. There's nothing improper in that decision. He didn't need that expert's report to make the decision. And as I mentioned earlier, I think even if you consider that opinion, there's nothing in that opinion that provides specific and substantial evidence of pretext. It is entirely an effort to second-guess an investigation after the fact with a fragment of the factual record that was actually available to the decision-maker. If there are any other questions, the panel will submit. Anything else? I think not. Thank you very much, Mr. Hoffman. Let's see. Ms. Meyer, it looks like you've got about two minutes and some change. Thank you, Your Honor. The idea that the district court just so happened to make the exact ruling the plaintiff had asked for that had been stricken as improper I think is wrong. I think it leads to question the Court's decision. If the Court clearly rejected the motion to strike the expert on the basis that it was improper and untimely, I don't know how the Court then turns around and makes that same decision without giving us a chance to respond to the authority. And certainly the Court hasn't. Isn't it essentially almost a Daubert determination that I've looked at the expert's report and I've determined that it's not going to help the trier of fact decide the pretext issue and therefore I wouldn't admit it or allow her to testify at trial? Whether it's Daubert or 7 or 2 or something along those lines, and I know that courts aren't required to hold a Daubert hearing, but they're able to make those rulings when the record is fully briefed and when there are presentations from both sides that allow them to do that. We were specifically excluded from having that presentation. District courts make those admissibility decisions all the time without full briefing. Well, what we have is a briefing from the other side that says and suggests improperly that experts of this caliber are never permitted and it's simply not the case, as we've cited in our briefs on appeal. Employment experts are admitted on lots of different bases. And I think that our expert would have been able to talk about the nature of the investigation, what really should have been done, the additional steps that would have been taken, and that could be credible evidence, specific and substantial, that would allow for the Court to conclude that an improper investigation had not taken place. With respect to the omission of that evidence, let's say it was admitted. What it establishes is there could be a fact issue about the adequacy of the investigation. Yes. And I think what I said to counsel, I think, is how does that get us to pretext? If they engaged in an investigation that wasn't a full investigation, they were going through some motions to justify a termination. If they were doing that, that means that the reason they're giving for the termination is not correct. And I would submit. Okay. What was there better about the investigation of the younger people? What was better about the investigation of the younger people? Yeah, the ones who they were relying on to show not pretext. I think the difference there is those were stark, clear, flagrant violations. This has to do with more of a continued practice as to how the time card situation was being properly applied at the site. I would also quickly say that there was 15 additional days of surveillance through the cameras. Those tapes were destroyed. So there's no chance to put that in context with the other issues. But the employer didn't accuse them of doing it other than the three or five days that they investigated, did they? That's the basis on which the termination decision was made. No, but I think that would have shown that there were times when they were working with outbreaks in other situations that would put more in context with what actually happened. There's really only one bad day of a 60-minute overage. Otherwise, it's much more minor infractions. Okay. I think we have your arguments in mind. Thank you both very much. The case just argued is submitted. And we are adjourned for the week.
judges: Garbis, Tallman, Rawlinson